Concurring Opinion by
Watts, J.,
which Battaglia, J., joins
Respectfully, I concur. Although I agree with the Majority in the recognition of de facto parenthood in Maryland, in my view, the Majority, in adopting the four-factor test set forth by the Supreme Court of Wisconsin in In re Custody of H.S.H-K., 193 Wis.2d 649, 533 N.W.2d 419 (1995), see Maj. Op. at 73-75, 85, 146 A.3d 446-47, 453, adopts a standard that is too broad and that could have a negative impact on children in Maryland.
By adopting the four-factor test set forth in H.S.H.-K., 533 N.W.2d at 435, the Majority holds that, under the first factor, when seeking de facto parent status, the third party must show “that the biological or adoptive parent consented to, and fostered, the [third party]’s formation and establishment of a parent-like relationship with the child[.]” In other words, the Majority holds that only one parent is needed to consent to *88 and foster a parent-like relationship with the would-be defacto parent. This will work in cases such as this one, where a second biological or adoptive parent does not exist, ie., where there is only one existing parent. Where there are two existing parents, however, permitting a single parent to consent to and foster a de facto parent relationship could result in a second existing parent having no knowledge that a de facto parent, ie., a third parent, is created. Such situations may result in a child having three parents vying for custody and visitation, and being overburdened by the demands of multiple parents. Today, many children are not living in a classic nuclear family. Families include not only same-sex married parents—in which one parent had a child before marriage—but also separated or divorced parents who conceived children during a marriage, as well as two parents who have never married. The Majority has written broadly a solution for de facto parents that will serve couples well under circumstances similar to the parties in this case, where there is only one biological or adoptive parent. The majority opinion, however, will have greater consequences in cases for children with two existing parents because a de facto parent request may occur without the knowledge or consent of the second existing parent. Children who already have difficulty with visitation schedules, or experience custody issues pertaining to two parents, will not be served well by the creation of a test that does not account for the second existing parent’s knowledge and consent.
Oddly, the Majority expresses concern that multiple defacto parentships not be created and that trial courts should be cautious about overburdening families with multiple people seeking access in that regard. See Maj. Op. at 75 n.18, 146 A.3d at 447 n.18. Ironically, however, the Majority expresses no concern about the creation of a single de facto parentship where there are already two existing parents, and where one parent may create a de facto parentship absent the other existing parent’s notice of, and consent to, the defacto parent-ship of a third party.
Imagining the untenable situation of a child who is parented by two adults one of whom, without the knowledge or consent *89 of the second already existing parent, creates a de facto parentship, I cannot agree with simply adopting the four-factor test without additional limits and safeguards. Even creating a standby guardianship in Maryland has traditionally required the consent of both parents. Indeed, under Md. Code Ann., Est. & Trusts (1974, 2011 Repl. Vol.) § 13-903(a), concerning judicial appointment of a standby guardianship, provides, in relevant part:
(1) Subject to the provisions of paragraph (2) and (3) of this subsection, a petition for the judicial appointment of a standby guardian of the person or property of a minor under this section may be filed only by a parent of the minor, and if filed, shall be joined by each person having parental rights over the minor.
(2) If a person who has parental rights cannot be located after reasonable efforts have been made to locate the person, the parent may file a petition for the judicial appointment of a standby guardian.
(3) If the petitioner submits documentation, satisfactory to the court, of the reasonable efforts to locate the person who has parental rights, the court may issue a decree under this section.
(Emphasis added). By contrast, here, the Majority creates the irreconcilable result that one parent in Maryland may not consent to a standby guardianship, absent documentation that the parent made reasonable efforts to locate and obtain the consent of the other parent, but that one parent may consent to and foster a de facto (third) parent for a child without any sort of notice to, or consent from, a second existing parent. In my view, this is not a desirable result.
Further, during the 2010 and 2015 legislative sessions, the General Assembly failed to pass de facto parent bills which were similarly or more narrowly constructed than the holding of the majority opinion. In 2010, two bills—Senate Bill 600 and House Bill 1241—were introduced “for the purpose of requiring a court to determine that an individual is a de facto parent under certain circumstances; establishing that an individual *90 who is judicially determined to a be a de facto parent has the duties and obligations of a parent; and generally relating to de facto parents.” S.B. 600, 2010 Regular Session, General Assembly of Maryland, http://mgaleg.maryland.gov/2010rs/bills/ sb/sb0600f.pdf [https://perma.cc/952F-XRN4] (capitalization omitted); H.B. 1241, 2010 Regular Session, General Assembly of Maryland, http://mgaleg.maryland.gov/2010rs/bills/hb/hb 1241f.pdf [https://perma.cc/8RQT-DAYP] (capitalization omitted). At that time, the proposed bills would have added a new section to the Family Law Article, providing, in pertinent part, that a court shall determine that an individual is a de facto parent if the individual requests a judicial determination of de facto parentage and if the court finds by clear and convincing evidence that the following circumstances exist:
(I) each parent of the minor child consented to, supported, and fostered the establishment of a parent-like relationship between the minor child and the individual;
(II) the individual has exercised parent-like responsibility for the minor child; and
(III) the individual has acted in a parent-like role for a length of time sufficient to have established a bonded and dependent relationship with the minor child that is parental in nature.
S.B. 600, 2010 Regular Session, General Assembly of Maryland, http://mgaleg.maryland.gov/2010rs/bills/sb/sb0600f.pdf [https://perma.cc/952F-XRN4] (capitalization omitted) (emphasis added); H.B. 1241, 2010 Regular Session, General Assembly of Maryland, http://mgaleg.maryland.gov/2010rs/bills/hb/hb 1241f.pdf [https://perma.cc/8RQT-DAYP] (capitalization omitted) (emphasis added). Ultimately, Senate Bill 600 received a hearing in the Senate Judicial Proceedings Committee, but no further action was taken, and House Bill 1241 received a hearing in the House Judiciary Committee, but was subsequently withdrawn following an unfavorable report. See Fiscal and Policy Note, S.B. 402, 2015 Regular Session, General Assembly of Maryland, available at http://mgaleg.maryland. gov/2015RS/fnotes/biL0002/sb0402.pdf [https://perma.cc/PP8L-973C].
*91 Five years later, in 2015, two bills—Senate Bill 402 and House Bill 577—-were introduced
FOR the purpose of authorizing a court, on request of certain parties in certain judicial proceedings, to determine whether an individual is a de facto parent of a child; authorizing an individual who asserts that the individual is a de facto parent to initiate or intervene in certain judicial proceedings by filing a certain pleading; establishing a certain burden of proof and standard of proof; requiring that a judicial determination on de facto parent status be in writing; establishing that an individual who is judicially determined to be a de facto parent has the duties, rights, and obligations of a parent unless the court makes a certain determination; requiring that certain disputes regarding the allocation of child custody and visitation be removed on the basis of the best interest of the child; defining a certain term; and generally relating to de facto parents.
S.B. 402, 2015 Regular Session, General Assembly of Maryland, http://mgaleg.maryland.gov/2015RS/bills/sb/sb0402f.pdf [https://perma.cc/5WNT-ZE4V]; H.B. 577, 2015 Regular Session, General Assembly of Maryland, http://mgaleg.maryland. gov/2015RS/bills/hb/hb0577f.pdf [https://perma.ee/EG2H-R57 A]. The proposed bills would have added a new section to the Family Law Article, providing, in pertinent part, that a de facto parent
means an individual, including a current or former spouse of a parent of a child, who:
(1) over a substantial period of time has:
(I) been treated as a parent by the child;
(II) formed a meaningful parental relationship with the child; and
(III) lived with the child;
(2) has undertaken full and permanent responsibilities as a parent of the child; and
(3) has held the individual out as a parent of the child with the agreement of a parent of the child, which may *92 be expressed or implied from the circumstances and conduct of the parties.
S.B. 402, 2015 Regular Session, General Assembly of Maryland, http://mgaleg.maryland.gov/2015RS/bills/sb/sb0402f.pdf [https://perma.cc/5WNT-ZE4V] (capitalization omitted) (emphasis added); H.B. 577, 2015 Regular Session, General Assembly of Maryland, http://mgaleg.maryland.gov/2015RS/bills/ hb/hb0577f.pdf [https://perma.cc/EG2H-R57A] (capitalization omitted) (emphasis added). Notably, Senate Bill 402 and House Bill 577 altered the definition of de facto parent previously proposed in 2010 by setting forth different criteria, including that the individual must have lived with the child over a substantial period of time and by eliminating the requirement that both parents of a child must consent to and foster the de facto parent relationship. Additionally, the proposed bills altered the burden of proof necessary for a court to determine whether an individual is a de facto parent to a preponderance of the evidence from clear and convincing evidence as previously proposed in 2010. Ultimately, Senate Bill 402 received a hearing in the Senate Judicial Proceedings Committee, but received an unfavorable report, see S.B. 402, 2015 Regular Session, General Assembly of Maryland, Senate Judicial Proceedings Committee Voting Record, http://mgaleg. maryland.gov/2015RS/votes_comm/sb0402_jpr.pdf, [https:// perma.cc/5LM9-J55U], and House Bill 577 received a hearing in the House Judiciary Committee, but was subsequently withdrawn following an unfavorable report, see H.B. 577, 2015 Regular Session, General Assembly of Maryland, House Judiciary Committee Voting Record, http://mgaleg.maryland.gov/ 2015RS/votes_comm/hb0577_jud.pdf [https://perma.cc/6JPQ-PLPD],
The proposed bills from 2010 and 2015 demonstrate that there are a number of details that necessarily must accompany any decision to recognize de facto parenthood in Maryland— from what burden of proof an individual bears to how an action for de facto parentship should be pled and what criteria an individual must satisfy to be declared a defacto parent. In my view, the majority opinion is broader than, and without the *93 constraints of, the withdrawn bills. For example, the majority-opinion includes no information on the burden of proof in a de facto parent case, the manner of petitioning to become a de facto parent, how a trial court should deliver an opinion in a de facto parent case, or, most importantly, a very basic limit that would protect children who already have two existing parents from the creation of a third parent in the absence of both existing parents’ knowledge and consent to that de facto parent relationship.
To fill the obvious void left by the majority opinion, I would offer the following guidance. In every instance in which a trial court is confronted with a request for de facto parentship, the trial court should ascertain whether there are one or two existing biological or adoptive parents. In the case of two existing parents, the trial court should require that the second parent have notice of the defacto parent request and ascertain whether the second parent consents to the de facto parent relationship. In satisfaction of the first prong of the H.S.H.-K. test, an action for defacto parenthood may be initiated only by an existing parent or a would-be de facto parent by the filing of a verified complaint attesting to the consent of the establishment of de facto parent status. The trial court should find by clear and convincing evidence that the parent has established:
(1) that the biological or adoptive parent consented to, and fostered, the petitioner’s formation and establishment of a parent-like relationship with the child, and in the event of two existing biological or adoptive parents, that both parents consented to the establishment of a de facto parentship;[1]
*94 (2) that the petitioner and the child lived together in the same household;
(3) that the petitioner assumed obligations of parenthood by taking significant responsibility for the child’s care, education and development, including contributing towards the child’s support, without expectation of financial compensation; and
(4) that the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship parental in nature.
See H.S.H.-K., 533 N.W.2d at 435-36. The trial court should be required to issue a written opinion explaining the reasons for granting or denying the request.
To be sure, the majority opinion is appropriate for the parties in this case and provides Petitioner deserved relief, but, in simply adopting the four-factor test from H.S.H.-K., with no additional safeguards or limitations, the Majority has drafted an opinion that fails to provide important safeguards as to how de facto parentships are to be created and fails to serve all litigants, including those similarly situated to the parties in this case as well as others who do not live in a classic nuclear family. In addition to lacking important procedural safeguards, the majority opinion does citizens, and particularly the children, of Maryland a disservice by not including additional protections to ensure that children and families are not overburdened by the custody and visitation demands of multiple parents, and by not including the limitation that, in circumstances where there are two existing parents, both parents need to have notice of, and the opportunity to consent to, the defacto parentship of a third party.[2]
For the above reasons, respectfully, I concur.
Judge Battaglia has authorized me to state that she joins in this opinion.

. Under the circumstance where a second existing parent may not he able to be located, the trial court should utilize the same procedure as used in the stand-by guardianship statute and require that the existing parent or would-be de facto parent could proceed with seeking a declaration of de facto parentship only after satisfactory documentation is produced to the trial court demonstrating that “reasonable efforts have been made to locate” the second existing parent. Est. & Trusts § 13-903(a).

. Where there is a lack of consent on the part of the second existing parent to the creation of a d& facto parentship, the parent who wants to *95 foster the de facto parentship or the would-be de facto parent is not precluded from facilitating that party's access to the child by establishing exceptional circumstances for the trial court’s consideration of the best interests of the child. See, e,g., Koshko v. Haining, 398 Md. 404, 444-45, 921 A.2d 171, 195 (2007) ("[T]here must be a finding of either parental unfitness or exceptional circumstances demonstrating the current or future detriment to the child, absent visitation from his or her grandparents, as a prerequisite to application of the best interests analysis.”).